UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL L., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] <br><br> Defendant. | No. 19 CV 7566 <br><br> Magistrate Judge McShain |

### MEMORANDUM OPINOIN AND ORDER

Plaintiff Michael L. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, the Court reverses the SSA's decision, denies the Acting Commissioner of Social Security's (Acting Commissioner) motion for summary judgment [23],[2] and remands this case to the agency for further administrative proceedings.

### Background

On October 17, 2017, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning September 2, 2016. [12-3] 34. The claim was denied initially and upon reconsideration. [*Id.*]. Plaintiff then requested a hearing, which was held by an administrative law judge (ALJ) on September 21, 2018. [12-4]. In a decision dated November 26, 2018, the ALJ found that plaintiff was not disabled and denied her application. [12-3] 34-43. The Appeals Council denied review on September 17, 2019 [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely appealed to this Court [*id.*], and the Court has subject-matter jurisdiction to review the Acting Commissioner's decision under 42 U.S.C. § 405(g).

---

[1] In accordance with Fed. R. Civ. P. 25(d), Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as the defendant in this case in place of the former Commissioner of Social Security, Andrew Saul.

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken form the CM/ECF header placed at the top of filings, except for citations to the administrative record [12], which refer to the page numbers in the bottom right corner of each page.

**Legal Standard**

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any listed impairments; (4) whether the claimant can perform his past relevant work; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. *See* 20 C.F.R §§ 404.1520(a)(4) & 416.920(a). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019)). But the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021) (internal quotation marks and citation omitted).

**Discussion**

At step one of her decision, the ALJ found that plaintiff has not engaged in substantial gainful activity since September 2, 2016, the alleged onset date. [12-3] 36. At step two, the ALJ determined that plaintiff suffered from the following severe impairments: status post left rotator cuff repair surgery; status post bilateral elbow surgeries for cubital tunnel syndrome; and morbid obesity. [*Id.*] 36-37. At step three, the ALJ ruled that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. [*Id.*] 37. Before proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform light work, except that plaintiff could only occasionally climb ladders, ropes, or scaffolds; occasionally push or pull with the left non-dominant upper extremity; and occasionally perform reaching in all directions, handling, and fingering with the left upper extremity. [*Id.*]. At step four, the ALJ found that plaintiff is unable to perform his past relevant work. [*Id.*] 41.

2

At step five, the ALJ determined that jobs existed in significant numbers in the national economy that plaintiff could perform. [12-3] 42-43. Relying on the testimony of vocational expert (VE) Gary Wilhelm, the ALJ found that plaintiff could perform the requirements of two unskilled, light-work jobs: (1) usher, of which, the VE testified, there were 25,000 full-time positions in the national economy; and (2) school bus monitor, of which, the VE testified, there were 28,000 positions that existed in the national economy. [*Id.*] 42; *see also* [12-4] 87 (VE testifying that all usher and school bus monitor jobs were "full-time"). The ALJ accordingly found that plaintiff was not disabled. [*Id.*] 43.

Plaintiff argues that the ALJ's decision should be reversed for two reasons. First, plaintiff argues that the ALJ failed to consider the aggregate effect of his impairments when determining his RFC. [14] 11. Second, plaintiff argues that the Acting Commissioner failed to prove at step five that a significant number of jobs existed in the national economy that he could perform. [*Id.*] 14-15. In support, plaintiff observes that, after the hearing concluded, he submitted a report from his own vocational expert, Susan Entenberg, stating that the usher and school bus monitor positions were not predominantly full-time positions. [*Id.*]; *see also* [12-25] 1419-20 (Entenberg's report). Rather, according to Entenberg's report, only 28.8% (or approximately 5,000) of usher positions were full-time jobs, while only 34.5% (or approximately 550) of school bus monitor positions were full-time. [12-25] 1419. Plaintiff contends that the ALJ failed to address this evidence in her written decision, even though it directly contradicted the ALJ's finding that there were 53,000 jobs in the national economy that a claimant with plaintiff's RFC could perform. Plaintiff further contends that 5,500 jobs in the national economy does not constitute a significant number of jobs for purposes of the ALJ's step five analysis.

The Court agrees that the ALJ's failure to address Entenberg's report constitutes reversible error, and that the case must be remanded for further proceedings.[3]

### I. The Commissioner Failed To Prove That A Significant Number Of Jobs That Plaintiff Could Perform Existed In The National Economy.

"The Commissioner bears the step-five burden of establishing that the claimant can perform other work that exists in significant numbers in the national economy." *Wargula v. Saul*, Case No. 20 C 568, 2021 WL 1962414, at *5 (N.D. Ill. May 17, 2021). To meet this burden, an ALJ typically relies on the testimony of a VE to assess whether a significant number of jobs exist in the national economy that a claimant can perform. *See Darley v. Berryhill*, No. 17 C 50199, 2018 WL 5631519, at *3 (N.D. Ill. Oct. 31, 2018). As applied to a VE's "estimate of available jobs in the national economy, the substantial evidence standard requires the ALJ to ensure that

---

[3] Because this issue is dispositive, the Court need not address plaintiff's other argument for reversing the ALJ's decision.

the approximation is the product of a reliable method." *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (internal quotation marks omitted). If a claimant challenges the VE's job-numbers estimate, "the ALJ must require the VE to offer a reasoned and principled explanation of the method he used to produce it." *Id.* at 822 (internal quotation marks omitted).

In this case, the ALJ failed to consider evidence that directly contradicted her finding that there were 53,000 full-time jobs in the national economy that plaintiff could perform. As noted above, VE Wilhelm testified that plaintiff could work as an usher and a school bus monitor, and that a total of 53,000 such jobs existed in the national economy. [12-4] 83-84. Asked by plaintiff's counsel "how many of those positions are part-time versus full-time," Wilhelm initially responded, "I don't have that information" before testifying that all the jobs were full-time positions according to the Dictionary of Occupational Titles. [*Id.*] 87. But plaintiff introduced a report from VE Entenberg stating that there were only 5,000 full-time usher positions in the national economy and only 550 full-time school bus monitor positions in the national economy; the rest of the positions were part-time jobs. [12-25] 1419. Entenberg based this conclusion on the "Skilltran Job BrowserPro 2018," *see* [*id.*], a method that VEs have permissibly used in many other cases. *See, e.g., Dawn L.C. v. Comm'r of Soc. Sec.*, Case No. 3:20-cv-626-GCS, 2021 WL 4488421, at *6 (S.D. Ill. Sept. 24, 2021) (collecting cases where VE testifying at hearing before ALJ based job-numbers estimate on Skilltran or "SkillTRAN Job Browser Pro application"). Despite admitting Entenberg's report into the record–and even though the report suggested that VE Wilhelm had overstated the number of full-time jobs that plaintiff could perform by more than 85%–the ALJ did not discuss this evidence in her written decision.

The Acting Commissioner argues that the ALJ's failure to address Entenberg's report was not error because an ALJ "is not required to touch on and discuss every piece of evidence in the record." [24] 11. This argument is meritless. Although an ALJ "need not provide a complete written evaluation of every piece of testimony and evidence" in the record, *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (internal quotation marks omitted), the ALJ may not "recite only the evidence that supports his conclusion while ignoring contrary evidence." *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). Here, the ALJ ignored what appears to be critical evidence suggesting that VE Wilhelm greatly overstated the number of full-time jobs existing in the national economy that plaintiff could perform. Given this failure by the ALJ, the Court cannot conclude that substantial evidence supports the ALJ's finding that jobs existed in significant numbers in the national economy that plaintiff could perform. On remand, the ALJ must address and resolve the contradiction between VE Wilhelm's testimony and Entenberg's report and make a new step-five finding.[4]

---

[4] In resolving this issue, the Court observes that both parties have ignored the issue whether, and the extent to which, an ALJ may rely on part-time work in deciding whether a significant number of jobs exist in the national economy. Plaintiff's brief assumes, without citation to

## Conclusion

For the reasons set forth above, plaintiff's request to reverse the SSA's decision and remand this case to the agency [14] is granted, and the Acting Commissioner's motion for summary judgment [23] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

*Heather K. McShain* (signature)

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: June 28, 2022**

---

authority, that an ALJ can consider only full-time work in making a step-five finding, while the Acting Commissioner ignores the issue entirely. Cases from the Seventh Circuit and the Northern District of Illinois have recognized that an ALJ may consider part-time work in making a step-five determination. *See Liskowitz v. Astrue*, 559 F.3d 736, 745 (7th Cir. 2009) (rejecting plaintiff's argument that "a VE may permissibly testify only as to the availability of full-time jobs"); *Sombright v. Astrue*, 10 C 2924, 2011 WL 1337103, at *19 (N.D. Ill. Apr. 6, 2011) ("This number is more than sufficient, even if some of the jobs are part-time, to meet the Commissioner's burden at Step 5 to show that Ms. Sombright could perform a substantial number of full time jobs available in the national economy."); *see also Pitts v. Colvin*, Civil Action No. 16-434, 2016 WL 6217068, at *4 (W.D. Pa. Oct. 25, 2016) (recognizing that "[p]art-time work may also be considered" at step five). The Court need not pursue this issue any further, however. Because the ALJ failed to address Entenberg's report, the ALJ could not have decided whether 5,500 full-time jobs and 47,500 part-time jobs together constituted a significant number of jobs. And because the ALJ made no findings on that question, the Court cannot itself decide whether the job figures in Entenberg's report constitute a significant number of jobs in the national economy. *See Crystal M. o/b/o D.R. v. Kijakazi*, No. 21 CV 2240, 2022 WL 1567061, at *5 (N.D. Ill. May 18, 2022) ("Review of social security decisions is limited to the ALJ's rationales, and a decision cannot be upheld by giving it new ground to stand on.").